-FILED-

FEB 11 2021

At _____ M
ROBERT N. TRDOVICH, Clerk
U.S. DISTRICT COURT
NORTHERN DISTRICT OF INDIANA

U.S.

Case NO.
2:19-CR-0140

Michael Christianson

Verified Third Motion to Dismiss Indictment (1 Amend As-Applied and Eight Amendment As-applied Arguments)

Now Comes the Defendant, pro se, pursuant to FRCrP 2, 12(b)(1), 50, to respectfully request that the Court dismiss COUNT I of the Indictment (DE 23) as 18 USC § 2252(a)(1) is being unfairly applied to the Defendant by the government in violation of the First Amendment, the Due Process Clause of the Fifth Amendment and as-applied to the Defendant, the severe mandatory minimum and severe secondary punishments and Fourty (40) year Sentence (being highly likely) is grossly disproportionate to his good faith belief that he was acting lawfully at all times relevant to the Charges in Count I (but unknowingly crossed the boundries of § 2252(a)(1)) in violation of the Eighth Amendment of the Constitution.*

* Rehaif v. U.S., 204 L. Ed. 2d 594, 602 (2019) ("a potential penalty of 10 years" described as "'harsh!'")

1

1.  In this Case §2252(a)(1) is being unfairly and improperly applied by the government and law enforcement against the Defendant, a disfavored and marginalized Citizen addressing subjects offending American sensibilities and sparking public inconvenience, annoyance, and unrest, resulting in a Chilling and inhibiting effect on his rights to write, illustrate and publish educational, artistic, religious and political works related to Naked-play, the unfairness of the government applying §2252(a)(1) to the Defendant, and the punishment and penalties being grossly disproportionate to his actions.

## Defendant's Memorandum Of Law In Support

Now Comes the Defendant, Michael Christianson, on his own Motion, and Submits His Memorandum Of law In Support of His Motion to Dismiss as follows:

2

# I.   Factual Background [*1]

The Defendant hereby refers to and incorporates into this Motion the definitional meaning of "Lascivious" presented in His Second Motion to Dismiss Indictment (Multiple Claims), Section II.1(a)-(c), Filed on January 4, 2021, as it relates to "Sexually explicit Conduct" under 18 USC §2252 (a)(1), and the "Four Corners" argument.

[*1] For the purposes only of this Motion, Defendant accepts the governments allegations as True: The charged visual depictions meet the legal definition of child pornography, technically, if any.

( INTENTIONALLY LEFT BLANK )

## Judicial Notice

The Defendant requests the Court take judicial Notice of adjudicative Facts. FRE 201(c)(2); Scherr v. Marriott, 703 F.3d 1069, 1073 (7 Cir 2013) (Court "may take judicial notice of documents that are part of the public record," including papers "from prior proceedings in a case")

3

On Nov 20, 2019, Defendant was charged in a two (2) count indictment with one (1) count transporting an unknown number and type of visual depictions believed to be cropped from one or more abandoned ebooks in Defendant's old LuLu Press Cloud account, and one (1) count transporting obscene matters (known as the "Trilogy"), all in alleged violation of Title 18 USC §2252(a)(1) and §1462, respectively.

The instant indictment arises out of a federal investigation into Kindness360® *2, an Indiana 501(c)(3) non-profit corporation that operated numerous charatible and social action websites doing business as: Indiana Freedom Alliance (IFA), VirtueUS, LaPorte Sentinel News, and Kindness360® Blog. More specifically, IFA advocated for virtuous Pedosexuals, their families, and friends (VirtueUS), seeking to educate, entertain, and inspire kids and adults to "Love the Skin they're In!" "To Live, Love, Play – Naked" and to foster the ideal of "Love is Love!" Mr. Christianson sought legal

---

*2 Kindness360, Inc., EIN 81-4327343; www.guidestar.org (Gold star rating); Kindness360® nor any dba is listed on Wikipedia's official list of Pedophile/Pederast Criminal organisations, see https://en_wiki_pedia.org/w/index.php?title=List_of_pedophile_and_pederast_advocacy_organizations&oldid=926798711.

Change in America related to negative attitudes and the misinformation Surrounding nudity in all its forms (the science of Adamology.) Subject to the traditional pillars of Naked-play: (1) Safe, (2) Consensual, (3) non-violent, (4) age-appropriate, and (5) parent approved. IFA was an advocacy newspaper blog offering articles, videos, ads, ebooks, and general legal information that expanded upon, advocated for, and detailed the social benefits of naked-play, while debunking myths, expelling the misinformation, and quashing the stereotypes of naked-play in the 21st Century. More importantly, though, none of the materials charged were pandered, "deliberately emphasiz[ing] the sexually provocative aspects.*3 in order to catch the salaciously disposed" Ginzburg v. U.S., 383 U.S. 463, 467, 472 (1966); Id., 474-476 (First Amendment does not protect a panderer.); See p. 15.

 The Defendant was arrested in July 2002, LaPorte Circuit Court, Cause No. 46C01-0207-FA-050, Indiana, for a single felony act of Child Molest (oral sex upon an adolescent male), and later convicted in 2003. He was Sentenced to serve Fourty (40) years executed in the Indiana Department of Correction (IDOC), with ten (10) years Suspended to probation. Defendant served Fourteen (14) of the Fifteen (15) executed years.

 During the Fourteen (14) years of Defendant's incarceration in IDOC he aggress—

*3 If any Such aspects. exist

5

ively studied both the Criminal law and Con-
stitutional law. As his legal skill and know-
lege increased, he filed Constitutional §1983
claims in Federal District Courts in Indiana
(settling two) and in the LaPorte Circuit Court,
LaPorte, Indiana (settling two.) The Defendant
also wrote a probationer's guide while at
Miami Correctional Facility in 2014 and he
wrote the Institutional Directive for the op-
eration and institution of Plainfield Correction-
al Facility's first Honor dorm program.

For numerous years Defendant studied the
SCOTUS cases of Ferber v. New York, Osborne
v. Ohio, Ashcroft v. Free Speech Coalition, U.S. v.
Williams, U.S. v. Stevens, and other cases deal-
ing with obscenity and child pornography, as
well as famalerizing himself with Indiana
and Federal pornography and obscenity laws,
including 18 USC § 2252A, § 2251, § 2256, and § 2257.

Between October 2015 and October 2016 the
Defendant spent his last year at New Castle
Correctional Facility, Indiana, voluntarily
attending an intensive 140+ hour Sex Of-
fender treatment program known as SOMM
II, even beyond the allotted hours for success-

ful Completion OF SOMM II.

Defendant's Probation stipulations permitted the defendant to view, possess, distribute, and transport visual depictions of minors consistant with 18 U.S.C. §2256(2)(A)(i)-(v) and Indiana's obscenity laws. See State v. Michael Christiansen, 46C01-0207-FA-050, LaPorte Circuit Court, CSS entry Nov 26, 2016 hearing.

In March of 2017, the Defendant moved into 101 Bond Street, APT 2, in LaPorte, Indiana, then later, he relocated and settled into APT 3 at the same location. With permission obtained from his probation officer, he used the internet for college, braille transcription, his non-profits, and in general, with the addition of Covenant Eyes® internet activity monitoring software installed on his personal devices and reporting weekly, his internet activity, to his probation officers Shantell Dingman, then Kevin Molloy (treatment provider), and finally, Gerald Mendoza.

Defendant organized and founded his parent non-profit — Kindness360, Inc. in Oct 2016. He incorporated Kindness360® in Indiana, trademarked the name, and obtained 501

7

(C)(3) Status from the IRS. Defendant was and remains the Chief Executive officer and Chairman of the Board of Kindness360®; EIN: 81-4327343; See www.guidestar.org for Kindness360, Inc. (Gold Star rating).

On information and belief, the Defendant was scheduled to move into his new VA home loan secured house on September 10, 2019. This home purchase was the culmination of hard work and dedication to improving his Credit score, employment, community standing, and home life during the 2.75 years he was under community supervision. Begining in October 2016, the Defendant started out in La-Porte, Indiana (upon his IDOC release) indigent, with poor Credit, homeless and without the help of family. Within 6 months the defendant secured an apartment so that he could begin his nonprofit mission of producing braille educational materials for blind and visually-impaired students in grades pre-K through 12. (The defendant had earned his literary and NEMETH (STEM) braille Certifications at Miami Correctional facility and was a top rated braille trans-

8

criber for almost 7 years during his incarceration. Although he was not able to make a sustainable braille organization, the Defendant continued to braille while taking full time employment (50+ hours a week) at PPA Industries, Inc., in LaPorte, IN. In 1.5 years, Defendant went from line assymblyman (at $7.50 hour) to Gatekeeper (at $15.00) per hour). During this time the Defendant was a frequent community volunteer for the Township Trustee's office in LaPorte, giving freely of his time and talents and physical abilities in aid of the poor and disadvantaged.

While in the community the Defendant attended and participated in 78 SOAR group sessions per year without missing or being late for a single sessions. When the Defendant became disillusioned with SOAR, he sought out and obtained one-on-one counseling in his community, paying a higher cost per session ($99.00 versus $35.00). The Defendant also attended — on time — _every_ probation officer meeting, enduring mile long walks in rain, snow, and hail. The Defendant

made no excuses.

Meanwhile, while homeless and after, the Defendant attended Ivy Tech College to obtain a Business Administration Certificate (1 yr), Western Governor's University online, and the Indiana Wesleyan University to complete his BA in Human Studies (8 hours short), online with active classroom participation. And also founded his own private Neo-catholic University to award non-accredited, life-time achievement honorary degrees to prisoners and ex-felons devoted to civil justice for virtuous Pedosexuals first, then others: St. Sebastian Neoteric Catholic University, a Cyber University.

## a. The Naked-play Anthology

The Defendant has authored and self-published numerous ebooks based on the Naked-play theme; They include:

1. The Story of the AMAZING Letter P! (lulu Press ISBN 978-1-64570-676-2)

2. <u>The Definitive Guide to Naked-play:
In the Bigoted, Fear Mongering Pseudo
Scientific Age</u> (Lulu Press, ISBN 978-0-
359-57317-2; 978-1-64570-513-0)

3. <u>Adaptation of Little Men, Or Life at
Plumfield With Joe's Boys</u>

4. <u>Adaptation of Peter Pan</u>

5. <u>Hey, Uncle Buck! What's Naked Play?</u>

6. <u>Grandpa has a Ding-a-ling</u> (for those who
<u>Care</u>) (Lulu Press, ISBN 978-1-64606-076-4)

7. <u>Hey, Uncle Buck! What is a boy? What is a
girl?</u> (Lulu Press, ISBN: 978-0-359-74555-5)

   The Defendant has authored and attempted
a version - abandoned in Lulu Press account
by the Defendant - of the following ebook
in the Naked-play Trilogy, but, upon inform-
ation and belief, Successfully published and
Sold (via <u>IFA</u> and <u>payhip.com</u> and <u>etsy.com</u>)
a revised version:

8. <u>You And Your Beautiful Daring Very Amazing Almost Never Naked Body</u> (unknown).

Noteably, the last three (3) ebooks (#6,7,8) of the anthology (known as the "Trilogy") are the focus of the indictment (<u>DE 23</u>) because in the Trilogy the Defendant used actual photographs instead of illustrations, throughout.

b. <u>The Trilogy</u>

The Trilogy has a broad based theme dealing with traditional and lawful forms of Naked-play. The Trilogy is an educational, artistic, anthropological, religious, and political work. The Trilogy, in general, is teaching children to love the skin they're in, tolerance and acceptance for homosexuality (Love is Love), to play naked (responsibly), and their natural right to enjoy self-pleasuring and lawful forms of naked-play.

Furthermore, the government has not and will not be able to uncover any evidence

12

to suggest that Defendant did anything with the visual depictions in the Trilogy other than merely use them in the Trilogy as part of the purposes, and for the reasons, stated above. In addition, the government's very lengthy and thorough investigation of Defendant throughout the course of this investigation has revealed no history of any allegations of untoward or illegal behavior involving children under the age of 16 since October 24, 2016 — the date of Defendant's entry into the Community; or for that matter, any complaints whatsoever about him and children that had any truth or validity; or any evidence to show contact with a child by any means, through the use of any means, including computer, in person, via third-party, or otherwise that would have violated a condition of Defendant's Probation or the law.

Those visual depictions forming the basis of the indictment (DE 23) that focus on the genitalia, do so only to educate and inform — not to groom

13

children for unlawful abuse or exploitation by other adults and/or children. See, U.S. v. Stevens, 559 U.S. 460 (2011)(reminding Courts that New York v. Ferber (1982) was decided on the basis of pure lewdness for lewdness's sake, and no case-by-case adjudication was required for pure criminal conduct)(citing to Ferber, 458 U.S. 747, 763-64, 66 (1982); U.S. v. Williams, 553 U.S. 285, 289 (2008) ("[T]his broad authority to proscribe child pornography is not, however, unlimited." The Child Pornography must meet the "Child protection rationale for speech restriction" the SCOTUS has held is necessary, in Ashcroft v. FSC, 535 US 234 (2002).

\*   In addition, there is no rational basis for the Enhanced Minimum Mandatory Penalty on Count I for someone situated as the Defendant who did not traffic in the visual depictions to "feed the poisonous 'kiddie porn' market" Ferber, 458 US at 775 (O'Conner Concurring)(Suggesting that the Constitution "might" "ban...works...regardless of the social value of the depictions."); Ferber, 458 US at 776 (Brennan and Marshall

concurring)(the "production of materials of serious value is not the 'low-profile, clandestine industry' that according to the Court produces purely pornographic materials."); Ferber, 458 U.S. at 777 (Stevens Concurring)("the State Statute that [Ferber] violated prohibits some Conduct that is protected by the First Amendment." and "no claim that films included any material that had literary, artistic, scientific, or educational value")); **✳** nor to pander child pornography as the "'[m]anner of distribution, circumstances of production, Sale, ... advertising ... [and] editorial intent ...'" Show that the Trilogy was meant for progressive parents and their children, not for the purpose of unlawful Conduct in the hands of criminally active Sexual deviants. ⊖ Hamling v. U.S., 418 U.S. 87, 130 (1974)(Quotation omitted); Ginzburg v. U.S., 383 U.S. 463 (1966)(holding evidence of pandering could be relevant), and that the Trilogy would further the lawful nonprofit purposes and goals of Indiana **✳** Freedom Alliance and VirtueUS; nor to

make a "permanent record" and "circu-
lation" of the minor's "participation".
Ferber, 458 US at 759. Instead, the Defend-
ant selected and used pre-cropped visual
depictions (he never intended to view or
transport as child pornography) for the
Trilogy that had the benefit of conceal-
ing the face, and other identifying char-
acteristics in many of the visual de-
pictions. The Defendant only searched
for and knowingly viewed and transport-
ed, "at the time", visual depictions he be-
lieved "in good faith" to be adults with
shaved genitilia and micro-penises,
some in sexual positions that had educa-
tional value and others in non-lascivious
and/or merely nude poses that had edu-
cational value. There was, at no time,
a purpose, plan, intent or motive to
exploit a child. Rosen v. U.S., 161 US. 29, 33 (1896)
      Further, upon information and belief,
the Defendant abandoned the publica-
tion of the Original Trilogy charged
in the Indictment (DE 23) and published
a revised edition of all three ebooks

16

(#6,7,8, supra) that did not use the charged visual depictions in the final publications. (However, the government has refused to provide the defendant with access to his BLUR accounts and his KGIX hosting account to verify this claim.) The Defendant sold his publications on payhip.com, etsy.com and ebooks.in-freedom.org, but the government has not charged him with money laundering for selling same, pursuant to 18 USC §1956. The original ebooks were abandoned during and/or shortly after editing and publication and less visual versions were published instead.

## II   Argument. EIGHTH AMENDMENT

The increased penalties under the Protect Act P.L. 108-21 and The Child Protection Act P.L. 98-292, all as amended, together and/or seperatly from/with the threat of property loss under 18 USC §2253(a)(3), draconian terms and conditions of probation, enhancements under the United

States Sentencing Guidelines, and exhorbent Fines Violate the Eighth Amendment's Prohibition Against Cruel and unusual Punishment.

A. _____ Standard

The Eighth Amendment has a "narrow proportionality principle" that "applies to noncapital Sentences" Harmelin v. Michigan, 501 U.S. 957, 996-97 (1991); accord, Solem v. Helm, 463 U.S. 277 (1983) The proportionality principle is the notion that the Defendant's punishment Should Fit the Crime and is tied to the government's goal of retribution. This bedrock Constitutional principle "broadly prohibiting excessive Sanctions" (Ewing v. California, 538 U.S. 11, 33 (2003) (Justices Stevens, Souter, Ginsburg, Breyer dissenting)) was First announced in Weems v. U.S, 217 U.S. 349 (1910). See also, U.S. Const. Amend 8 ("Excessive bail Shall not be required, nor excessive fines imposed, nor cruel and unusual Punishments inflicted")

Although the Eighth Amendment does not "require Strict proportionality between Crime and Sentence" Harmelin, 501 U.S. at

18

1001, "[but] forbids only extreme sentences that are 'grossly disproportionate' to the crime", Ibid, by "broadly prohibiting excessive sanctions, the Eighth Amendment directs judges to exercise their wise judgment in assessing the proportionality of all forms of punishment." Ewing, 538 U.S. at 33 (dissent); Ewing, 538 U.S. at 13 ("The gravity of the offense must be compared to the harshness of the penalty."); Atkins v. Virginia, 536 U.S. 304, 311 (2002)(The Eighth Amendment prohibits "excessive" sanctions)

1. <u>Risk of Excessive Penalty to be Imposed</u>

The SCOTUS in <u>New York v. Ferber</u>, 458 U.S. 747, 773 (1982) recognized that "the penalty to be imposed is relevant in determining whether demonstrable overbreadth is substantial." In Ferber, the SCOTUS determined implicitly that the New York Statue's §263.15, a statue substantially similar to 18 USC §2252(a)(1), overbreadth was "real" under the Broadrick standard, but not substantial enough. Ferber, 458 US at 773

19

("We hold that § 263.15 is not substantially overbroad.") Both being a requirement for a successful facial attack. See. <u>Broadrick v. Oklahoma</u>, 413 U.S. 601, 615 (1973) (holding a statue must, "particularly where conduct and not merely speech is involved" "must not only be real, but substantial as well".) Since 1982, however, the political and cultural climate has hardened against child pornography defendants. In this case, the Defendant's pursuit of social policy changes in the way America views nudity between, say, children and adults, is given excessively hard treatment by heavy-handed prosecutors by the Cancel Cultures war on freedoms:

The "Censoriousness is also spreading more widly in our culture: an intolerance of opposing views, a vogue for public shaming and ostracism, and the tendency to dissolve complex policy issues in a binding moral certainty.... But now it is all too common to hear calls for swift and severe retribution in response to proceived transgressions of speech and thought." <u>Fox News</u> "Cancel Culture Letter",

20

9 July 2020.; See also, <u>Litigation Strat-egies for Internet Pornography Cases</u>, p.108 (Aspatore : 2012)("An awareness of the heavy animosity toward defendants charged in child sex cases must be paramount throughout the process.")

There are certainly unconstitutional risks, when considered together, that are excessive enough to make for an excessive penalty:

(i) <u>18 USC § 2252(b)(1)</u> mandating a 15 year minumim sentence ("for not less than 15 years nor more than 40 years") because defend-ant has an 18 year old, single-felony con-viction for child molest in 2003 in-volving the defendant and an adolesent male under his legal guardianship.

(ii) <u>18 U.S.C § 2253(a)(3)</u> mandating a defendant found to have violated <u>§ 2252</u> "shall forfeit to the U.S. such person's interest in any property, real or personal, used or intended to be used" in committing or promoting the offense.

21

(iii) <u>Dual-Sovereignty Doctrine</u>, places the defendant at hightened risk of a Consecutive Sentence if Convicted of crimes that are prosecuteable in the State of Indiana Pursuant to Ind. Code <u>35-42-4-4(b), (c)</u> for Child exploitation and Child porno-graphy, respecfully.

(iv) <u>The FBI's Search, seizure of defendant's Personal property and his 15 month de-tention</u> has resulted in lost employee-ment, loss of his house, personal property, Savings, good Credit history, and personal and business interests even <u>before</u> a trial on the merits. See, <u>2:19-MJ-177, 178, 182, 183, 184</u>. The Defendant is home-less, facing bancruptsy, and is destitute based only on probable Cause, at the age of 51. See <u>DE 23</u>.

(v.) <u>18 USC § 2259A(a)(2)</u>, Facing a fine of up to $250,000, a Special assessment of $100.00, and a special Child pornography-related assessment of up to $35,000.00; See <u>18 USC 2259A(c)</u> and <u>18 USC § 3572(a)(1)</u>.

22

# III. Overbreadth as-applied

18 USC §2252(a)(i)'s overbreath as-applied is real and substantial under the holding of Broadrick, 413 U.S. at 615 and the reasoning in Ferber, 458 U.S at 773. Although overbreath challenges are disfavored, Sabri v. U.S., 541 US. 600, 609-10 (2004), the SCOTUS has said in Sabri that overbreath successes are more likely when they're grounded "on the strength of specific reasons weighty enough to overcome our well-founded reticence."; See also, Carissa Hessick, The Limits of Child Pornography, 89 Ind. L. J. 1437 (Fall 2014)("Perhaps because of lengthy sentences at their disposal, prosecutors accross the country have used child pornography laws to reach behavior that falls well outside the boundries of what is ordinarily perceived as child pornography." * 1439)

• First, the "penalty to be imposed is relevant" Ferber, 458 U.S. at 773; SCOTUS requires a higher level of specificity when a statue has harsher penalties, like §2252(a)(i). See, Village of Hoffman Estates v. Flipside, 455 U.S. 489, 498-99 (1982)("degree of vagueness" tolerated depends in part on its "nature"). Here, the Defendant faces severe and harshly

23

ostricizing criminal penalties.

• Second, <u>the material charged in the Indictment (DE 23) does not threaten the harms sought to be combated by the government</u>. The few visual depictions used in good faith to illustrate Defendant's children's books is not the plethora of hard-core child pornography transported by the quintessential child pornographer and gives substantial weight to the Defendant's efforts to locate and use only legitimate forms of anthropological, free-form, birth, naturism, clinical and adult nudity. Defendant acquired the images through an internet search for adult pornography that included "shaved vaginas" and "micro-penises", and not do to any lack of impulse- or self-control issues. None of the visual depictions will show violations of 18 USC §2256(2)(A)(i)-(iv) involving any person under 18.

More importantly, two (2) of the charged children's books were published by Lulu Press. See, <u>I.a.6</u> and <u>I.a.7</u>, supra, both on June 22, ~~200~~ 2019. Only the third book,

24

I.a.6, supra, was denied publication after a LuLu Press Senior Manager's content review for "potential copyright infringement issue[s] and no violations of the company's terms of service" (quoting SA Chad Oakes Affidavit, Case 2:19-MJ-177, para. 10, p. 4) and after conducting said review, "specifically" determined the book(s) to "include numerous photographs of naked children... including some depicting children under the age of 12." Ibid.

The visual depictions used in the Trilogy and in Count I (an unreasonable multiplication of charges by the government) cannot be shown to have hash values* associated with known or suspected child pornography. U.S. v. King, No 18-0288-AF (CAAF 2019)(No "hash values" discovered); Wright v. State, 18S-CR-166 (Ind Oct 4 2018)(OS Triage ran on seized

---

\* Hash is the SHA1 (Secure Hash Algorithm value), a fixed-length identifier associated with a specific image file, used to trace down an image; Jack Gillum, Prosecutors Dropping Child Porn Charges... (ProPublica) April 3 5a.m EDT. (Calling it "info hash")

25

Computer discovered "Hash tags" indicative of Child Pornography Series.)

A. Unknown Provenance of the Visual depictions

The Defendant Conducted a broad based, imprecise Search for adult images to illustrate the Trilogy. He used popular Search engines, Such as Safari and Google, he did not enlarge the images nor did he navigate off of the Search results page. His intent while viewing the images was never to intentionally view Child pornography in violation of a valid Federal or State law. See 18 USC § 2252(a)(4)(A)("Knowingly accesses with intent to view" "a minor engaging in Sexually explicit Conduct"), or knowingly transport Same. Defendant had no knowledge of the provence of the images; no knowledge of what went on when the visual depictions, charged in Count I, were produced. U.S. v. Schuster, 706 F. 3d 800, 806 (7 Cir. 2013)(observing lascivious "is an intensely fact bound question"); Mikesell v. Conley, 51 Fed. Appx. 496, 503 (6 Cir 2002)(a finding of lewdness would vary according to the cir-

26

cumstances: in cases where nothing was known of what actually went on, the picture itself would have to have a "stronger suggestion of eroticism" than it would in a case of a known series of exploitation), U.S. v. Edwards, determined that "Congress clearly meant to punish those people who actually know that their conduct contributes to or actively furthers the sexual abuse of children..." 1993 U.S. Dist LEXIS 15658, *18-19 (ND ILL 1993)

27

Where viewer, re-
ceiver, transporter of a "visual depiction is
ignorant of the circumstances of the produc-
tion of the visual depictions, the scienter
requirements may be violated." U.S. v. Frabizio,
459 F.3d 80,95 (1st Cir 2006)(Torruella, Concurr-
ing in judgment); Frabizio, 459 F.3d at 95
("the circumstances of the production of the
image are relevant to punishing the producer ...
but are of dubious relevance in punishing the
possessor ..., who is likely ignorant of the
details of its production."); "Whether an image
'arouses sexual desire' is informed by the in-
tent of the person creating the image," U.S.
v. Miller, 829 F.3d 519, 525-526 (7 Cir 2016), and
when that is unknown, the Court would be "en-
gaging in conclusory boot strapping rather than
the task at hand — a legal analysis of the
sufficiency of the evidence of lasciviousness."
U.S. v. Villard, 885 F.2d 117, 125 (3d Cir 1989).
Because the creator's intent and purpose remain
a mystery, "the primary focus in evaluating
the legality of the charged photographs must
be on the images themselves." Miller, 829
F.3d at 526 (quoting U.S. v. Russell, 622 F.3d 831,

843 (7 Cir 2011)(citation omitted)
• When the Defendant conducted his search
for visual depictions to illustrate important
anatomical features, parts of the genitilia,
and — in some illustrations — the traditional
and anatomical aspects of the erect penis
and/or a specific sexual act, he relied on
the dicta in Ferber, 458 U.S. at 763 that reason-
ed "a person over the statutory age who
perhaps looked younger could be utilized"
to produce the Trilogy. He also relied on
"Simulation." (Ferber, 458 US at 763) and
Virtual child porn protected under Ashcroft
v. Free Speech Coalition, 535 U.S. 234 (2002),
so that visual depictions looked like youth-
ful adult males and females and/or uncanny
adults. To meet these mandates, he broadly
searched for adults with "shaved vaginas"
and "micro-penis" condition, etc.
Each of the visual depictions held serious
educational and scientific value for the
Trilogy in identifying the male and female
anatomy, revealing in accurate and
realistic detail the fundamental aspects and
parts of the penis and the vagina, so essential

29

to the education, entertainment and inspira-
tion of the young readers and progressive
parents learning about the Naked-play phi-
losophy and lifestyle.

Turgidity of a penis with clear scientific
and educational significance and import
should not make a visual depiction lascivious
through the eyes of a heavy-handed prosecu-
tor, especially when the material is used to
educate, entertain and inspire lawful activ-
ities in boys and girls but where the "content
is objectionable" to the moral majority.
(Annex Books v. City of Indianapolis, 740 F.3d
1136, 1138 (7 Cir 2014)) or addresses subjects
and themes "offending [American] sensibilities"
(Free Speech, 535 U.S. at 245). Roth promises
responsible adults, advocating for unpopular
ideas, that the First Amendment will "as-
sure unfettered interchange of ideas for
bringing about of political and social chang-
es desired by the people." Roth v. U.S., 354
U.S. 484, ____ (1957). The First Amendment
protects the uniform, lock step cowards
seeking popularity and wealth as well as

the bold, Counter-Culture Coteries and individuals bravely Controverting the myths and fallacious group think of popular Culture. Terminiello v. Chicago, 337 U.S. 1, 4-5 (1949)("The right to speak freely and to promote diversity of ideas ... is therefore one of the Chief distinctions that sets us apart from totalitarian regimes") ... We "invite dispute" which prevents a "standardiza-tion of ideas by legislatures, Courts, or do-minent political or Community groups."); Miller v. California, 413 U.S. 15, 34 (1973)("The first Amendment" Protects works that have Serious value "regardless of whether the government or a majority of the people approve of the ideas those works represent."); Bolger v. Youngs Drug Products, 463 U.S. 60, 65 (1983) (Generally, government has no power to restrict expression based on "its ideas, it's subject matter, or its Content.")

But, in this Case, because the author is a registered citizen and on probation for an almost two (2) decades old, single felony, superficial act of oral sex upon an adole-

31

scent male, the government seeks to use the severe punishment and penalties in its bag of tricks to silence him forever by adding the argument that His Trilogy has been "designed for use by an adult in grooming a child for sexual contact" (Affidavit by SA Chad Oakes, Case No. 2:19-MJ-177, -178, -183, -184, -185) and to "make it seem normal for children's 'play' (both alone and with adults) to include engaging in sexual contact and sexual acts." Ibid. This is not only utterly false, it is a forbidden encroachment. As Free Speech reminds us, "the mere tendency of speech to encourage unlawful acts is not a sufficient reason for banning it" under Brandenburg v. Ohio, 395 U.S. 444, 447-48 (1969), Ashcroft v. Free Speech Coalition, 535 U.S. 234, 253 (2002); See also, U.S. Williams, 553 U.S. 285, 300 (2008)(Offering the statement "I encourage you to obtain child pornography" as protected advocacy). It follows that Brandenburg protects speech having a mere tendency to encourage child grooming behavior(s). Plus, the "grooming" myth has been debunked as Constitutionally Significant in Free Speech, 535 US at 250, even as the SCOTUS has continued to zealously protect the Constitutional principle "that [the] par-

ent's claim to authority in their own house-
hold to direct the rearing of their children" —
being it teaching traditional, moral-majority
religious dogma or instilling neoteric Catholic
ideals based on adamology and science —
"is basic in the structure of our society"
<u>Prince v. Massachusetts</u>, 321 U.S. 158, ____ (1944);
relied on in <u>Ginsburg v. New York</u>, 390 U.S. 629,
639 (1968).

IV.    <u>18 USC §1462 Meets the Government's Leg-
       itimate Needs for Punishment, Deter-
       rance, Incapacitation and Retribution.</u>

   Based on the facts of this case, the Defendant,
at the least, engaged in the legitimate, nonlas-
civious good faith use of suspected visual
depictions charged in Count I and II of the
Indictment (DE 23); Under these circumstances
the Eighth Amendment prohibits the harsh
over-criminalization of Defendant's academic
activity by aggrevating the penalty and punish-
ment, by charging the visual depictions outside
the content and context of their use in illustra-
ting the Trilogy through charging a violation
of 18 USC §2252(a)(i) that mandates a fifteen
(15) year minumum sentence under a law intend-
ed to punish those citizens who transport
<u>mere</u> child pornography for sexual abuse

33

Or harm of a minor, not to produce or transport a literary or educational work. Not to mention the Collateral Consequences of up to life time registry and probation and mandatory fees and assessments that result in a Cruel and unusual punishment for Someone who took great effort to Comply with the law and Write a Trilogy that advocated for a morally marginalized ideal — Naked-play, but did not Knowingly or purposefully Use Contraband visual depictions, if any, to feed the illegal Kiddie-porn market, Or to pander Child pornography Or to compound the harms in the illicit Circulation of Contraband images, Such as privacy violations, or the physical/emotional harms a minor Suffers in the production and circulation. Ferber, Supra.

WHEREFORE Defendant, pro se, requests this Honorable Court Dismiss Count I of the Indictment for any one or more of the As-applied First and Eighth Amendment claims raised and for such other and further relief as this Court deems just and equitable.

Respectfully Submitted,



34

Michael Christianson
18031-027
WICC-Chicago
71 W. Van Buren St.
Chicago, IL 60605

## Certificate

I hereby certify that on Feb 11, 2021,
I hand delivered the forgoing Motion to Dis-
miss to the Clerk of the Court for filing,
in open Court.